J-S75015-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| IN RE: ADOPTION OF B.L.B. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| APPEAL OF: B.L.H. | |
| | Nos. 1133 WDA 2019 |

Appeal from the Order Entered June 19, 2019
In the Court of Common Pleas of Westmoreland County
Orphans' Court at No: 003-2019

| | |
|---|---|
| IN RE: ADOPTION OF B.L.B. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| APPEAL OF: B.L.H. | |
| | Nos. 1136 WDA 2019 |

Appeal from the Order Entered June 19, 2019
In the Court of Common Pleas of Westmoreland County
Orphans' Court at No: 002-2019

BEFORE:   STABILE, KUNSELMAN, and PELLEGRINI,[*] JJ.

MEMORANDUM BY STABILE, J.:                    FILED MARCH 26, 2020

_____

[*] Retired Senior Judge assigned to the Superior Court.

Appellant, B.L.H. ("Mother"), appeals from the June 19, 2019 orders terminating her parental rights to her Children ("Children"), B.L.B. (born February 14, 2013) and B.L.B. (born March 6, 2016), pursuant to 23 Pa.C.S.A.§§ 2511(a)(2), (5), (8), and § 2511(b).  We affirm.

The orphans' court's opinion contains the following summary of the pertinent facts:

> [Children] were adjudicated to be dependent on September 29, 2017, after [Mother's] paramour had been charged with rape and aggravated indecent assault of a six-year-old, and [Mother] thereafter failed to prevent further assaults by her paramour. [Mother] was 'indicated' as a perpetrator by omission.  [Mother] had been told by her own child (age six, and not involved herein) of the continuing assaults, and she had been advised by the agency of the abuse allegations; nevertheless, she refused to believe the allegations, refused non-offender services and continued to live with her sexual offender paramour, William Brady, while he continued offending the six-year-old.
>
> [Mother] was ordered to attend non-offender and grief counseling, but she did not believe the allegations against her paramour. Thus, [Children] were determined to be without proper parental care and control.  A plan was ordered.
>
> By October 2018, [Mother] had demonstrated 'minimal' compliance.  She had obtained stable housing and employment, but attended only 88 out of 128 parenting sessions, and had attended only 16 [of 29] non-offender counseling sessions, and was unsuccessfully discharged from further services.
>
> Moreover, [Mother] continued to live with her paramour, William Brady, who was considered a grave danger to the safety of [Children].

Orphans' Court Opinion, 9/12/19, at 2.

Appellant filed this timely appeal on July 2, 2019.  She claims Appellee, the Westmoreland County Children's Bureau, failed to prove by clear and

convincing evidence that termination of her parental rights was warranted under § 2511. Appellant's Brief at 1. On appeal from an order terminating parental rights, we consider whether competent evidence supports the orphans' court's decision. In re B.L.W., 843 A.2d 380, 383 (Pa. Super. 2004) (en banc), appeal denied, 863 A.2d 1141 (Pa. 2004). We will not reverse absent an error of law or abuse of discretion. Id. We employ a "broad, comprehensive" review of the record to ensure that competent evidence supports the orphans' court's decision. Id.

Section 2511(a)(8) authorizes termination where there is clear and convincing evidence that:

> (1) that the child has been removed from the care of the parent for at least twelve (12) months; (2) that the conditions which had led to the removal or placement of the child still exist; and (3) that termination of parental rights would best serve the needs and welfare of the child.

In re C.L.G., 956 A.2d 999, 1005 (Pa. Super. 2008) (en banc). Termination under § 2511(a)(8) does not require an assessment of the parent's ability or willingness to remedy the conditions that led to placement; the only question is whether those conditions continue to exist. In re R.J.S., 901 A.2d 502, 511 (Pa. Super. 2006).

Vijaya Greene, one of Mother's non-offender counselors, testified that Mother attended 16 of 29 non-offender treatment sessions from October of 2017 through September of 2018. Mother never made any progress because she was not truthful with Greene. In particular, Mother denied that Brady

- 3 -

sexually assaulted her older daughter. Id. at 65, 67-68. Mother denied having any history of mental health problems, and she was not truthful about her plans to end her relationship with Brady. Id. at 63, 67. At one session, Greene asked Mother if she would choose Children over Brady and Mother responded that she would "see how things go." Id. at 66. Greene did not believe Mother would protect Children from Brady, because Mother did not believe Brady had done anything wrong. Id. at 70. Likewise, Greene did not believe Mother would protect Children from abuse by other men in the future. Id. at 71.

Joe Narduzzi, another of Mother's non-offender counselors, testified that Mother attended 7 of 12 non-offender treatment sessions from December of 2018 to April of 2019. Narduzzi testified that Mother denied that her daughter was the victim of a sexual assault. Id. at 82-83. Mother believed the child's father coached her into making the accusations, and that the child's graphic description of Brady's assault was based on pornography her father showed her. Id. at 85-86. Mother and Brady violated a no-contact order promptly upon Brady's release on bail for the sexual assault offense. Id. at 88. Narduzzi testified that it was unlikely Mother could protect Children from abuse. Id. at 88-90. Narduzzi did not believe Children should be returned to Mother, given her lack of progress in non-offender treatment and her inability to acknowledge the abuse of one of her children. Id. at 94.

Mother testified that she began dating Brady in February of 2017 and that the relationship ended in February of 2019. Id. at 135. She stated that her employer was understaffed, that she worked 60 to 80 hours per week, and that her work schedule prevented her from attending some of her treatment sessions. Id. at 126. Mother denied that any of her children ever reported being the victim of a sexual assault. Id. at 129-30. She confirmed her belief that her older daughter's father was responsible for the abuse allegations against Brady. Id. at 132, 149. Mother acknowledged an ongoing custody battle with the father of her older daughter. Id. at 150. She denied that Brady was an abuser. Id. at 144.

In summary, the record reflects that Children were placed in agency custody on September 7, 2017, and the agency filed its termination petition approximately sixteen months later, on January 4, 2019, thus satisfying the first element of § 2511(a)(8). As the trial court noted, Children were placed because of Mother's inability to accept that Brady sexually abused one of her other daughters. The record plainly demonstrates that this condition continues to exist. Mother underwent months of non-offender treatment with several counselors and never made any progress. She never accepted that Brady, with whom Mother commenced a relationship shortly after Children's natural father died, committed the sexual abuse. N.T. 5/2/19, at 65, 81, 84, 144. She blamed her daughter's father for coaching the allegations. Id. at 85. Furthermore, Mother did not end the relationship with Brady prior to the

TPR petition, despite several declarations of her intent to do so. Id. at 63, 67. Mother was unsure of whether she would chose Children over Brady. Id. at 66. Brady never attended offender treatment, and he faced additional criminal charges for assaulting Mother while he was out on bond on the sexual assault charges. Id. at 87-88, 108. Several of Mother's counselors testified that the pattern of abuse toward Mother's daughters could repeat itself, either with Brady when he gets out of jail, or with another opportunistic paramour. Id. at 71, 94. Therefore, the record supports a finding by clear and convincing evidence that Mother never remedied the condition that led to Children's removal, and that Mother's failure was plainly detrimental to Children's best interests. We discern no error in the trial court's decision to terminate Mother's parental rights under 2511(a)(8).

Next, we must consider the extent of the bond between Mother and Children pursuant to 2511(b):

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include [i]ntangibles such as love, comfort, security, and stability. [T]his Court [has] held that the determination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child. The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond.

In re T.S.M., 71 A.3d 251, 267 (Pa. 2013) (some internal citations and quotation marks omitted).

The instant record reflects that Mother and Children have love and affection for each other, and that a bond exists. The record also reflects that Children view their visits with Mother as mere playtime. N.T. 5/2/19, at 117. Furthermore, the record indicates that Children have a very positive relationship with their pre-adoptive foster parents, and that their needs and welfare are met in their foster home. Id. at 41. They are well adjusted and in a routine. Id. at 115. If reunited with Mother, however, Mother likely would lack the ability to protect Children from sexual abuse. We discern no error in the trial court's decision that the Children's needs and welfare warranted termination under § 2511(b).

In light of all of the foregoing, we affirm the orders terminating Mother's parental rights.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/26/2020